**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHOICE HOTELS INTERNATIONAL, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 8:25-cv-01371-PX |
| | * | |
| C ROC HURP, LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*

## REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Request for Judgment by Default" (the "Motion") and memorandum of law in support thereto, (ECF Nos. 16, 16-1), filed by Plaintiff Choice Hotels International, Inc. ("Choice Hotels" or "Plaintiff"). Initially, Plaintiff brought a lawsuit under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9 and 13, to seek confirmation of an arbitration award and entry of judgment against Defendants C ROC HURP, LLC ("Defendant C ROC"), Meenesh Bhoola, Prakash Bhoola, and Rajendra Jariwala (collectively, "Defendants"). (ECF No. 1 ("Complaint")).

Pursuant to 28 U.S.C. § 636 and Local Rule 301 (D. Md. 2025), the Honorable Paula Xinis referred this matter to me to author a report and to make recommendations. (ECF No. 17). I do not believe that a hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

For the reasons set forth below, I ultimately recommend that Plaintiff's Motion be **GRANTED IN PART**, **DENIED IN PART**, resulting in damages being awarded only as set forth herein.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.  **Factual Background**

1.  *The Franchise Agreement*

Plaintiff is a publicly-traded hotel franchising company incorporated under Delaware law with its principal place of business in North Bethesda, Maryland. Plaintiff franchises hotels domestically and internationally under its trademarks, brand marks, names, and systems. (Complaint, ¶ 1; ECF No. 19-2).

On June 27, 2018, Defendant C ROC, by and though Defendants Meenesh Bhoola, Prakash Bhoola, and Rajendra Jariwala, as guarantors and members of C ROC HURP LLC, executed a Franchise Agreement ("Agreement") with Choice Hotels. (Complaint, ¶ 6; ECF No. 19-2, pp. 2, 34, 39-42). By signing the Agreement, Defendants acknowledged that they were bound by its terms and conditions. (ECF No. 19-2, p. 34).

In addition, Defendants became bound by the arbitration clause of the Agreement, which required them to resolve any controversy or claim arising out of or relating to the Agreement through "final and binding arbitration in the state of Maryland before either the American Arbitration Association, J.A.M.S., or National Arbitration Forum…." (Complaint, ¶ 6; ECF No. 19-2, p. 23).

2.  *Monthly Royalty Fees, System Fees, Other Fees, and Commissions Required by the Agreement*

By entering into the Agreement, Defendants agreed to pay monthly Royalty Fees, System Fees, other fees, and commissions as fixed percentages of the preceding-month's "Gross Room Revenues."[1] (ECF No. 19-2, p. 4). Royalty Fees were 6% of the preceding-month's Gross Room

---

[1] The term "Gross Room Revenues" is defined as "all revenues from the rental, sale, use or occupancy of any of the Rentable Rooms, for whatever purpose…." (ECF No. 19-2, p. 2). Gross Room Revenues include cash and credit transactions and proceeds from business interruption insurance, but exclude taxes required by law, revenues from

Revenues. System Fees were 3.5% of the preceding-month's Gross Room Revenues subject to increase in accordance with inflation and cost adjustments. (*Id.*). Other fees and commissions could be reasonably charged by Plaintiff in accordance with the Agreement's terms. (*Id.*). This arrangement was to continue through 20 years after the Opening Date, which is the date that the Defendants began to rent any portion of the "Rentable Rooms."[2] (ECF No. 19-2, p. 3).

When making their monthly payments, the Defendants were also required to submit accurate reports of the Gross Room Revenues. (ECF No. 19-2, p. 4). These monthly reports helped Plaintiff track the Defendants' payments. (*Id.*). If the Defendants failed to timely submit reports, the Agreement stipulated that various penalties might apply. In particular, the Plaintiff would collect a late fee in the amount of 1.5% of the previous-month's monthly fees. (*Id.*).

Plaintiff reserved the right to terminate the Agreement if Defendants defaulted on their material obligations. (ECF No. 19-2, pp. 13-14). Default could result if Defendants failed to pay fees within 10 days of receiving a written notice of default, or upon Defendants' receipt of multiple notices of default. (*Id.*). In addition, Defendants were obligated to pay liquidated damages to Plaintiff upon termination of the Agreement as calculated according to §10(d)(2) of the Agreement. (ECF No. 19-2, p. 15).

    3.  *Arbitration Award Related to Unpaid Fees, Interest, Liquidated Damages, and Arbitration Costs*

Plaintiff alleges that it sent Defendants a notice of default on September 2, 2020, because Defendants failed to timely make monthly payments. (Complaint, ¶ 9). On October 22, 2020, Plaintiff issued another notice of default. (ECF No. 19-2, p. 43). The notice stated that Defendants

---

telephone calls, movie rentals, vending machines, room service, and food and beverage sales. (*Id.*).
[2] The term "Rentable Rooms" is defined as "the Sleeping Rooms and the Meeting Rooms, collectively." (ECF No. 19-2, p. 1). There are 82 rentable Sleeping Rooms. (*Id.*). The remaining Rentable Rooms are Meeting Rooms used for meetings, conferences, and banquets. (*Id.*).

had to pay all outstanding amounts within 10 days of the notice's date to cure the default. (*Id.*). Plaintiff issued a notice of termination effectively terminating the Agreement on April 15, 2021, due to Defendants' failure to cure the initial notice of default. (ECF No. 19-2, p. 46).

Plaintiff initiated arbitration proceedings with the American Arbitration Association, and an arbitrator held a preliminary hearing on May 29, 2024. (ECF No. 1-2, p. 1). Defendants failed to appear despite sufficient notice. (*Id.*). Defendants failed to submit any documents, and the arbitrator based his decision on evidence presented by Plaintiff, including the Affidavit of Plaintiff's Senior Corporate Credit Manager, Gery Brown. (*Id.*). On September 4, 2024, the arbitrator found that the Defendants' breach warranted Plaintiff's termination of the Agreement, and that Defendants jointly and severally owed Plaintiff $251,147.96 for unpaid fees, plus $157,542.56 for interest on those fees, and $134,185.89 for liquidated damages, resulting in a total amount of $542,876.41. (ECF No. 1-2, p. 2). In addition, the arbitrator found that Defendants were to bear the arbitration costs totaling $5,825.00 ($4,400.00 for administrative fees of the American Arbitration Association and $1,425.00 for compensation of the arbitrator), which Defendants were to reimburse to Plaintiff. (*Id.*). As part of the Arbitration Award, Defendants were given 30 days post-judgment to pay the entire award to Plaintiff, or the outstanding amount would be subject to interest due at an annual rate of 6%. (*Id.*).

## B.  Procedural Background

On April 30, 2025, Plaintiff filed a Complaint against the Defendants, alleging material breach of the Agreement by failing to timely pay monthly fees. (Complaint, ¶ 8). Plaintiff seeks confirmation of the Arbitration Award and entry of default judgment in its favor. (Complaint, p. 2). In addition, Plaintiff seeks damages and costs incurred as a result of Defendants' material breach, "plus post-judgment interest until paid, and $400.00 for the costs of this action."

(Complaint, p. 7).

On August 4, 2025, the district court issued an Order finding that Plaintiff failed to serve the summons and Complaint upon Defendants within 90 days of filing the Complaint. The Order directed the Plaintiff to show cause within 14 days as to why the Complaint should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) and Local Rule 103.8(a). (ECF No. 5). On August 6, 2025, Plaintiff filed affidavits of service reflecting that service of process had been effectuated upon Defendant Rajendra Jariwala on May 25, 2025, and Defendants C ROC, Meenesh Bhoola, and Prakash Bhoola on June 3, 2025. (ECF Nos. 6, 7).

On August 6, 2025, Plaintiff filed its "Return of Service." (ECF Nos. 6, 7). Attached in support thereto were exhibits, including an affidavit from Janna A. Sakla, Esq. ("Ms. Sakla") and proof of service on Defendants. (ECF Nos. 6-1, 7-1 through 7-3). In her affidavit, Ms. Sakla represents that in June 2025, after she received the summonses for the Defendants, process server Christopher Lemerise properly served the Defendants with the Complaint and summonses at their residences or usual places of abode. (ECF No. 7-3).

Defendants failed to file a responsive pleading within the 21-day period as required by Federal Rules of Civil Procedure 4 and 12, specifically by June 16, 2025 (for Defendant Rajendra Jariwala) and June 24, 2025 (for Defendants C ROC, Meenesh Bhoola, and Prakash Bhoola). (ECF No. 8). The Agreement provided that judgment on an arbitration award may be entered in any court having jurisdiction notwithstanding Defendants' failure to respond or to appear. (ECF No. 19-2, p. 24).

On September 3, 2025, the Clerk of the Court entered default and issued Notices of Default against Defendants C ROC, Meenesh Bhoola, and Prakash Bhoola. (ECF Nos. 8 through 11). On September 9, 2025, the Clerk of the Court entered default and issued a Notice of Default against

Defendant Rajendra Jariwala. (ECF No. 14). In the Notices of Default, the Clerk notified the Defendants that they had 30 days from the dates of the Notices to file motions to vacate. (ECF Nos. 9 through 11, 15).

On September 11, 2025, Plaintiff filed the Motion against the Defendants and an affidavit in support thereto. (ECF Nos. 16, 16-1). In addition, Plaintiff appended: (a) a document from the arbitrator, Timothy J. Bloomfield, related to the arbitration proceedings and findings; (b) a document with a proposed template for the requested entry of default; and (c) a certificate of service of the request on the Defendants. (ECF Nos. 16-2 through 16-4).

On May 22, 2026, the undersigned issued an order requesting supplemental materials from Plaintiff, particularly the remaining portions of the Agreement, both notices of default (sent on September 2, 2020, and October 22, 2020, respectively), other exhibits Plaintiff relies upon to calculate damages, and any other materials Plaintiff wanted the Court to consider. (ECF No. 18). On June 5, 2026, Plaintiff filed a supplemental document containing the Agreement, Affidavit of Gery Brown, Notice of Default sent on October 22, 2020, Notice of Termination, Last Statement, Interest Calculation, and Liquidated Damages Calculation. (ECF Nos. 19 through 19-2). To date, none of the Defendants has filed a responsive pleading or otherwise sought to defend against the instant lawsuit.

## II.   DISCUSSION

### A.   Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Fed. R. Civ. P. 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

In this case, more than one year has passed since the Defendants were served with the Complaint, and more than nine months have passed since the Clerk's entry of default and Plaintiff's filing of the Motion. (*See* ECF Nos. 7, 8, 13, 16). Defendants have neither filed an opposition nor otherwise defended against this case. Plaintiff filed affidavits of service demonstrating that the Complaint, Summonses, and supporting documents were served via a private process server upon each respective Defendant or a representative authorized to accept service. (ECF Nos. 7, 13). I further find that the Defendants are not in active military service and have been available to respond or defend against this case yet have failed to do so. (*See* ECF Nos. 8, 14). Thus, I recommend that default judgment be entered.

**B. <u>Damages</u>**

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. *See* Fed. R. Civ. P. 8(b)(6).  Regarding "default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'"  *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required").  The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings.  Fed. R. Civ. P. 54(c).

*1. The Arbitration Award*

Plaintiff asserts that it is entitled to confirmation of the Arbitration Award and to judgment by default. (Complaint, ¶ 20; ECF Nos. 16, 16-1). The Supreme Court has explained that "nothing in the FAA precludes the normal operation of federal jurisdiction regarding live claims pending before a federal court." *Jules v. Andre Balazs Props.*, 146 S. Ct. 1209 (2026). The Fourth Circuit has reasoned that an appeal arising under the FAA "grants federal courts of appeals jurisdiction over district court orders confirming arbitration awards" because the district court's confirmation

of the arbitration award was final. *First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, 141 F.4th 522, 527 (4th Cir. 2025). I find that Plaintiff has the right to seek the district court's confirmation of the Arbitration Award. I further find that the applicable FAA provisions, the Agreement and individual guaranties entitle Plaintiff to seek confirmation of the Arbitration Award.

In order to recover unpaid fees, parties in contractual privity to arbitration proceedings and review are permitted to file a civil action. *See* 9 U.S.C. § 9. Here, a lawsuit has been filed. If a plaintiff prevails in its action, a district court is then required to grant such an award except when an award is vacated, modified, or corrected per 9 U.S.C. §§ 10 and 11. *Id.* Pursuant to 9 U.S.C. § 9:

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

I find that, per the arbitration clause in the Agreement, the parties agreed that any controversy or claim arising out of or relating to this Agreement or the breach of this Agreement would be sent to final and binding arbitration in the state of Maryland, and that judgment on the arbitration award could be entered in any court having jurisdiction. (ECF No. 19-2, p. 24). Although the Arbitration Award does not indicate in which judicial district the arbitration hearing occurred, the arbitrator awarded interest using the Maryland statutory rate, and the Agreement provides that the arbitration was to occur in Maryland. (ECF Nos. 1-2; 19-2, p. 23). I find that Choice Hotels filed its application to confirm the award on April 30, 2025, within one year of the arbitrator's decision on September 4, 2024. (Complaint; ECF No. 1-2). I further find that,

9

consistent with 28 U.S.C. § 1332(a), the parties in this case are diverse, and the amount in controversy satisfies the minimum amount required for diversity jurisdiction. Accordingly, I find that this Court has jurisdiction to confirm the Arbitration Award.

Turning to the question of whether this Court should award the damages sought, judicial review of an arbitration award is limited. Specifically, if a clause in a valid franchise agreement provides for arbitration and an arbitration was conducted pursuant to that clause, then a court's review of an arbitrator's decision is only "to determine… whether the arbitrator did [her] job, not whether [s]he did it well, correctly, or reasonably, but simply whether [s]he did it." *Choice Hotels Int'l, Inc. v. Mander*, Civ. No. GJH 14-3159, 2015 WL 1880277, at *3 (D. Md. Apr. 22, 2015) (citing *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (further citations and internal quotation marks omitted)). As a preliminary matter, 9 U.S.C. § 10 does not apply here. Next, a court may modify or correct an award under the following circumstances:

> (1) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award. (2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted. (3) Where the award is imperfect in matter of form not affecting the merits of the controversy. The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

The undersigned finds that elements (2) and (3) of § 11 do not apply here. Regarding the first element, for a district court to modify an award, a miscalculation must be evident, meaning it appears on the face of the arbitration award. *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998). I find that there is an evident miscalculation on the face of the Arbitration Award, ECF No. 1-2, which suggests that grounds for modifying or correcting an

arbitration award are present in this case. *Id*. Accordingly, I recommend that the Court grant the Motion with the corrected arbitrator's award of $507,902.87,[3] plus post-judgment interest at the rate permitted by Maryland law beginning October 4, 2024 (30 days after the date of the Arbitration Award).

### 2. *Specific Recovery Sought*

The record demonstrates that Defendant C ROC and Defendants Meenesh Bhoola, Prakash Bhoola, and Rajendra Jariwala, as its guarantors, are parties to the Agreement, which binds them to the terms governing the required monthly payments. (ECF No. 19-2, pp. 39-42). I further find that the Agreement governing the monthly fees obligated the Defendants to make timely payments based upon the preceding-month's Gross Room Revenues. (*See* ECF No. 19-2, pp. 4-5, 13).

As permitted by 9 U.S.C. §§ 9 and 13, Plaintiff seeks confirmation of the following Arbitration Award totaling $548,701.41: (1) a sum of $251,147.96 in unpaid franchise fees ($210,349.22 in unpaid fees from March 2019 through May 2021 and $40,798.74 in outstanding interest from October 2018 through May 2021 per the final invoice); (2) a sum of $157,542.56 in interest ($116,743.82 for interest on unpaid fees from June 2021 to June 2024 and $40,798.74 in outstanding interest from October 2018 through May 2021 per the final invoice); (3) $134,185.89 in liquidated damages calculated according to the Agreement; (4) $5,825.00 in arbitrator compensation and administrative expenses plus accrued interest on the award at the rate of 6% *per annum*; and (5) $405.00 in court costs. (ECF Nos. 1-2, 16, 19-2).

I reviewed all of the Plaintiff's supporting documents to make my findings and recommendations.

---

[3] *See* further explanation at Section II.B.2.a., *infra.*

a.   Unpaid Fees

Plaintiff asserts that the Defendants owe a sum of $251,147.96 for outstanding franchise fees ($210,349.22 in unpaid fees from March 2019 through May 2021 and $40,798.74 in outstanding interest from October 2018 through May 2021 per the final invoice). (Complaint; ECF Nos. 1-2; 19-2, p. 65). I find that Plaintiff's request for $251,147.96 in outstanding fees is not supported by exhibits, nor by the declaration from Mr. Brown. (ECF Nos. 1-2; 19-2, pp. 37, 68). Mr. Brown reviewed the Agreement and the final invoice, and calculated the total franchise fees owed to Choice Hotels.  (ECF No. 19-2, p. 66). I credit Plaintiff's final invoice, which provides a monthly breakdown of the outstanding fees that Defendants owed.  (ECF No. 19-2, pp. 55-66). The final invoice, Mr. Brown's statement, and Plaintiff's calculations provide that the actual total for unpaid fees between March 2019 and May 2021 amounts to $210,349.22. (ECF No. 19-2, pp. 37, 65, 68). In the Arbitration Award, the arbitrator initially stated that total unpaid fees equaled $210,349.22, per the final invoice. (ECF No. 1-2, p. 2). However, the arbitrator later stated that total unpaid fees equaled $251,147.96 when summarizing his findings. (*Id.*). It appears that when restating his findings, the arbitrator erroneously added $40,798.74 (for outstanding interest charges on the final statement from October 2018 through May 2021) to both the total for unpaid fees from March 2019 through May 2021 and to the total accrued interest calculation, thus awarding that portion twice. Thus, I further find that the Arbitration Award for $251,147.96 in unpaid fees is improper because $40,798.74 of that total was already computed as interest. Because the miscalculation appears on the face of the award, correction is proper. *Apex Plumbing Supply, Inc.*, 142 F.3d at 194.  In sum, I recommend an award to the Plaintiff for unpaid fees in the corrected amount of $210,349.22. Thus, the request to award unpaid fees in a higher amount is **DENIED**.

b.  Outstanding Interest and Accrued Interest on Unpaid Fees

Plaintiff claims interest in the sum of $157,542.76 ($116,743.82 for accrued interest on the aforementioned outstanding franchise fees and $40,798.74 for the outstanding interest charges from October 2018 through May 2021). (ECF Nos. 1-2; 19-2, pp. 65-66).

The Agreement establishes guidelines for computing interest on unpaid fees. Interest will be assessed at the rate of 1.5% per month "on all charges, costs, fees and amounts due under this Agreement but not paid on time…." (ECF No. 19-2, p. 5). Here, there is undisputed evidence that Defendants owed $210,349.22 for failed or untimely payments for the months of March 2019 through May 2021. Therefore, Plaintiff is entitled to interest assessed on the unpaid amount for these months totaling $116,743.82.

I also find that Plaintiff's request for outstanding interest from October 2018 through May 2021 is supported by exhibits and a declaration from Mr. Brown. (ECF Nos. 1-2; 19-2, p. 38). Mr. Brown reviewed the final invoice and the Agreement, and calculated the total amount of interest owed to Choice Hotels. (ECF No. 19-2, pp. 65-66). I credit Plaintiff's last invoice, which provides a monthly breakdown of the outstanding interest fees that Defendants owed between October 2018 and May 2021. (ECF No. 19-2, pp. 55-66). Therefore, Plaintiff is entitled to prior outstanding interest charges from October 2018 through May 2021 totaling $40,798.74.

Accordingly, I recommend that the Court award Plaintiff interest in the amount of $157,542.76 ($116,743.82 for accrued interest on outstanding franchise fees and $40,798.74 for the prior outstanding interest charges), plus any further accrued interest consistent with the Agreement.

c.  Liquidated Damages

Plaintiff requests $134,185.89 in liquidated damages, in accordance with the rate set forth in the Agreement. (ECF Nos. 1-2, p. 2; 19-2, pp. 15, 69). I find that the requested amount of

liquidated damages does not exceed what is permitted by the Agreement. (ECF No. 19-2, pp. 15, 69).

I find that Plaintiff's request is supported by exhibits and declarations from Ms. Sakla and Mr. Brown. (ECF Nos. 19-1, p. 3; 19-2, p. 38). Mr. Brown reviewed the Agreement and calculated the total amount of liquidated damages owed. (ECF No. 19-2, pp. 15, 38). I also credit Plaintiff's liquidated damages calculation document, which provides a breakdown of the liquidated damages owed to Choice Hotels pursuant to the agreed-upon formula. (ECF No. 19-2, p. 69).

As such, I recommend liquidated damages to the Plaintiff in the amount of $134,185.89.

### d.    Post-Judgment Interest

Plaintiff seeks post-judgment interest on the Arbitration Award. (ECF No. 1-2). I previously recommended that the award total be adjusted to reflect the corrected calculation.[4] Accordingly, I recommend post-judgment interest not exceeding the Maryland legal rate of 6% *per annum* on $507,902.87 of the corrected Arbitration Award. See Md. Const. art. III, § 57.

### e.    Court Costs

In the Complaint, Plaintiff seeks court costs in the amount of $400.00 (court filing fee). (Complaint, p. 7). However, in Plaintiff's Motion, Plaintiff requests $405.00 for court costs. (ECF No. 16, p. 2). Fed. R. Civ. P. 54(d)(1) makes clear that costs should be awarded to the prevailing party. In addition, Local Rule 109.1(b) makes clear that a party seeking costs is entitled to a filing fee. I find that the $405.00 filing fee is compensable under 28 U.S.C. §1920(1). United States District Court for the District of Maryland, Guidelines for Bills of Costs, § III.12 (D. Md. 2022).

Accordingly, I recommend an award of $405.00 in court costs to Plaintiff for the filing fee.

---

[4] *See* explanation at Section II.B.2.a., *supra.*

**III.     CONCLUSION**

In sum, I respectfully request that the district court **GRANT IN PART**, **DENY IN PART** the Motion (ECF No. 16), as set forth herein. I further recommend that the district court enter judgment in favor of the Plaintiff in the sum of $508,307.87, to be paid jointly and severally by the Defendants. The total amount is broken down as follows:

1) Unpaid fees in the amount of $210,349.22 for default on the Agreement;

2) Accrued interest on the unpaid franchise fees and prior outstanding interest charges in the amount of $157,542.76, plus any further accrued interest consistent with the Agreement;

3) Liquidated damages in the amount of $134,185.89;

4) Administrative fees and expenses of the American Arbitration Association and compensation of the arbitrator totaling $5,825.00;

5) Post-judgment interest on $507,902.87 of the award at a rate of 6% *per annum*, as permitted by Maryland law beginning October 4, 2024 (30 days after the date of the Arbitration Award);

6) Court costs in the amount of $405.00.

Dated: August 7, 2026

_____/s/_____

The Honorable Gina L. Simms
United States Magistrate Judge
